SHARTSIS FRIESE LLP
ANTHONY B. LEUIN (Bar #95639)
aleuin@sflaw.com
JOHN J. STEIN (Bar #253777)
jstein@sflaw.com
FELICIA A. DRAPER (Bar #242668)
fdraper@sflaw.com
One Maritime Plaza
Eighteenth Floor
San Francisco, CA 94111-3598
Telephone: (415) 421-6500
Facsimile: (415) 421-2922

Attorneys for Plaintiffs TKG Management Inc. and Pincay RE, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TKG Management Inc., a Missouri Corporation, and Pincay RE, LLC, a Delaware Limited Liability Company,<br><br>    Plaintiffs,<br><br>  v.<br><br>Chubb Custom Insurance Company and Chubb North America,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT FOR BREACH OF CONTRACT, BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING, AND DECLARATORY RELIEF** |

Plaintiffs TKG Management, Inc. ("TKG") and Pincay RE, LLC ("Pincay"), for their Complaint for Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, and Declaratory Relief (the "Complaint"), allege as follows:

## SUMMARY

1. Defendant insurer sold Plaintiff TKG an Environmental Liability Insurance policy, with limits of $5,000,000, which covered (among other things) "clean-up costs" resulting from a "pollution incident." This case arises from the Defendants' refusal to pay clean-up costs arising from Plaintiffs' remediation of arsenic in soil. Although Plaintiffs' costs exceeded $17,000,000, Defendants have refused to pay more than a small fraction of those costs. Worse, rather than pay the $5,000,000 policy limits, Defendants embarked upon a campaign intended to delay, hinder, and impede recovery, the essence of bad faith.

## PARTIES

2. TKG is and has been at all times relevant hereto a Missouri corporation with its principal place of business in Columbia, Missouri. TKG is the primary named insured under the insurance policy that, together with the conduct of its issuers, is the subject of this action.

3. Pincay is and has been at all times relevant hereto a Delaware limited liability company authorized to conduct business and conducting business in the State of California. Pincay is an additional named insured under the insurance policy that, together with the conduct of its issuers, is the subject of this action. Pincay is the owner of the real property located at the Southeast corner of S. Prairie Avenue and Pincay Drive (W. 90th St.), Inglewood, California ("the Pincay Property").

4. Defendant Chubb Custom Insurance Company ("Chubb") is and has been at all times relevant hereto a New Jersey corporation with principal place of business in the State of New Jersey. Chubb is an insurance company associated with the Chubb Group of Companies. Chubb issued an Environmental Liability

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

Insurance Policy, Policy Number 37313226, insuring TKG for the Policy Period February 28, 2013 to February 28, 2016 (sometimes hereafter "the Environmental Liability Policy" or "the Policy").

5. Plaintiffs are informed and believe and allege thereon that Defendant Chubb North America ("Chubb North America") is a business entity of unknown form, with an office in Chesapeake, Virginia, that is associated with the Chubb Group of Companies and acts or has acted as agent for Chubb to adjust and administer insurance claims brought under policies issued by Chubb. Plaintiffs are informed and believed and allege thereon that Chubb North America is partly or wholly responsible for Chubb's failure to properly investigate and pay the subject claim, and otherwise shares with Chubb responsibility for all of Chubb's prevarication, mishandling of the subject claim, and failures to comply with the covenant of good faith and fair dealing, all as alleged herein.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1332 in that there is, as of the time of commencement of this action, complete diversity of citizenship between Plaintiffs and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue properly lies in this Court pursuant to 28 U.S.C. Section 1391(b) in that a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred within this Judicial District and in that a substantial part of the property that is the subject of this action is situated in this Judicial District.

## THE SUBJECT LAND AND INSURANCE POLICY

8. On or about February 28, 2013, Chubb issued the Environmental Liability Policy to TKG. The Environmental Liability Policy was effective as of February 28, 2013 and was issued for the three year Policy Period concluding February 28, 2016.

9. TKG is and at all relevant times has been in the business of

developing and managing real estate and has had a long business relationship with Chubb. TKG has insured numerous properties with Chubb; has scheduled numerous properties as insured locations under various policies issued by Chubb, including the Environmental Liability Policy; and long ago made known to Chubb its need for protection against environmental liabilities as it pursues its real estate business.

10. TKG's needs in this regard were well known to Chubb and Chubb's underwriters for many years before the underwriting and issuance of the Environmental Liability Policy. Chubb, in its course of dealing with TKG, asked TKG such questions as it wished to ask regarding properties to be scheduled as insured locations under the Environmental Liability Policy's scheduled properties; obtained Phase I environmental reports, where available for such properties, on request; and was keenly aware when it issued the Environmental Liability Policy to TKG that TKG, as part of its real estate business, would in fact improve properties that it owned or purchased.

11. In 2005, Hollywood Park Land Company ("HPLC") acquired the 238-acre Inglewood parcel that was formerly the site of the Hollywood Park Racetrack and Casino ("Hollywood Park Site"). In July 2006, HPLC began working with the California Regional Water Quality Control Board, Los Angeles Region ("RWQCB") to review the conditions at the Hollywood Park Site to address environmental concerns during the property redevelopment. In 2007, HPLC submitted to RWQCB a Soil Management Plan (the "Mandated Plan") designed to address the management of chemicals in the soil, including arsenic, at the Hollywood Park Site. The Mandated Plan was approved by local officials later that year. An affiliate of TKG acquired an interest in Hollywood Park Land Company in June, 2014, after the Mandated Plan was in place.

12. A TKG affiliate formed Pincay for the specific purpose of acquiring the 60 acre Pincay Property adjoining the Hollywood Park Site to support the

- 3 -

development of a mixed use development potentially to include a new National Football League stadium for the Los Angeles Rams. The Pincay Property was previously used as an asphalt parking lot, and Pincay acquired the Pincay Property on or about January 9, 2014 in part because of its suitability for the same use going forward.

13. On or about May 12, 2015, Chubb amended the Policy to add Pincay to the Policy's Schedule of Named Insureds at TKG's request. At or about the same time, Chubb amended the Policy's Schedule of Insured Sites to specifically include the Pincay Property as an insured location, to wit: "SEC of South Prairie Ave & Pincay Drive (West 90th Street), Inglewood, CA 90301."

14. In the Environmental Liability Policy, Chubb provided TKG (and Pincay as an additional named insured) seven different environmental insurance protections in Coverages A through G. In Coverage A -- captioned "Pre-Existing Pollution Incidents At Insured Sites" -- Chubb specifically promised to pay, among other things, "**clean-up costs** incurred by you resulting from a **pollution incident** or an **illicit abandonment** that is first discovered in whole or in part on or under an **insured site** by a **responsible party** during the **policy period**…."

15. The Policy defined "**pollution incident**" to mean "a discharge, dispersal, seepage, migration, release or escape of '**pollutants**.'"

16. The Policy defined "**pollutants**" to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and **waste**."

17. The Policy defined "**clean-up costs**" to include, among other things, reasonable and necessary costs for neutralization, removal, remediation, or disposal of "**pollutants**" to the extent required by "**environmental laws**."

18. The Policy defined "**environmental laws**" to mean "governmental laws, rules, regulations, ordinances, guidance documents and executive, judicial or administrative orders and directives applicable to an "**environmental incident**"

- 4 -

Case No.  COMPLAINT FOR BREACH OF CONTRACT, BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING AND DECLARATORY RELIEF

and to include a "voluntary cleanup program established pursuant to law or regulation."

19. The Policy defined "**environmental incident**" to mean a "**pollution incident** or **illicit abandonment**" and included any series of continuous, repeated, or related "**pollution incidents**."

20. In or around November 2015, Plaintiffs determined that levels of arsenic had been detected at the Pincay Property significantly in excess of ambient levels. Arsenic concentrations in soil samples at the Pincay Property were as high as 590 mg/kg, a concentration dozens of times higher than would be found as background concentrations of arsenic in the surrounding area. Plaintiffs promptly and timely reported the arsenic contamination to Chubb pursuant to the terms of the Policy.

21. As of November 2015, the adjoining Hollywood Park Site was already the subject of the Site Cleanup Program opened by the RWQCB, including the Mandated Plan. As required by the City of Inglewood initiative approving the stadium project, the Pincay Property was formally made subject to the Mandated Plan by the RWQCB.

22. Pursuant to the Mandated Plan, Plaintiffs have spent in excess of $17,000,000 to reduce the concentrations of arsenic on the Pincay Property to the levels approved and directed by the RWQCB.

23. In a correspondence dated January 28, 2016 (the "January Letter"), Chubb acknowledged that soil sampling activities had revealed elevated levels of arsenic and lead in various spots at the Pincay Property and agreed to "handle this matter." In the January Letter, Chubb identified only narrow reservations of rights pertaining to inapplicable exclusions for (1) dry cleaning solvents such as PCE, (2) petroleum hydrocarbons, and (3) pollutants in groundwater.

24. In a subsequent correspondence dated April 22, 2016 (the "April Letter"), Chubb supplemented its earlier reservation of rights and identified a

- 5 -

"Change in Use or Operations" clause as a potential justification for delaying or denying its obligation to cover the loss.  In doing so, Chubb suggested for the first time that TKG, whom it knew to be in the business of acquiring, improving, and managing real property, could lose coverage for properties it improved, even if the "change" were to maintain a parcel previously used for parking in a manner appropriate for continued parking lot use.

25.  Chubb's April Letter further asserted that an independent environmental consultant's knowledge of separate contamination of the Hollywood Park Site might somehow constitute prior knowledge by TKG of contamination on the Pincay Property and that Chubb might on that basis deny coverage as a "Known Incident."

26.  By email dated October 27, 2016 ("the October Representation"), Chubb wrote that, "after further review,"

> Chubb wishes to advise that, while continuing to reserve all rights as set forth in previous communications with the Insured, we will reimburse the Insured for reasonable and necessary costs of remediation in connection with this site.
>
> We will be requesting that [TKG's agent] provide copies of all invoices to Chubb's environmental consultant…

27.  In accordance with the October Representation, Plaintiffs proceeded with and concluded the Mandated Plan at the Pincay Property and timely delivered to Chubb invoices reflecting reasonable and necessary costs of the arsenic remediation, which totaled more than $17 million.

28.  Even though the Soil Management Plan for the Pincay Property has cost Plaintiffs over $17 million, and even though Chubb is only responsible for $5 million of remediation costs pursuant to the limits of the Policy, and notwithstanding its plain promises in the Policy and its commitments in the October Representation, Chubb has failed and refused to pay for all but $432,606 of the clean-up costs Plaintiffs have incurred.

29.  Further, Chubb has failed and refused to process the claim in good

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

faith and has taken contradictory positions ultimately designed to impede Plaintiffs' recovery and delay Chubb's payment. Specifically, and without limitation, Chubb has done the following:

(a) Refused to acknowledge that the arsenic contamination at the Pincay Property was the result of a Pollution Incident;

(b) Refused to acknowledge that concentrations of arsenic in the ground at levels dozens of times in excess of both (i) permissible standards, and (ii) background concentrations found in nature, are the result of a Pollution Incident;

(c) Improperly attempted to characterize arsenic contamination in the ground as barred from coverage by a provision of the Environmental Liability Policy excluding coverage for dry cleaning solvents such as PCE;

(d) Improperly attempted to characterize arsenic contamination in the ground as barred from coverage by a provision of the Environmental Liability Policy excluding coverage for groundwater Pollutants;

(e) Improperly attempted to characterize arsenic contamination in the ground as barred from coverage by a provision of the Environmental Liability Policy excluding coverage for petroleum hydrocarbons;

(f) Advised Plaintiffs that Chubb would "handle" the matter and pay covered expenses, but refused to do so;

(g) Asserted that TKG, whom Chubb knew to be engaged in the business of acquiring and improving real estate, might have no coverage for "change in use" of properties TKG insured with Chubb;

(h) Asserted that improving a parking lot to a condition in which it can continue to be used as a parking lot is an excluded "change of use;"

(i) Failed adequately to investigate the claim, as required by *Egan v. Mutual of Omaha*, 24 Cal. 3d 809 (1979);

(j) Engaged in post-loss underwriting and attempted to interpret a "change in use" exclusion in a way that is not supported by the Policy and that, if

- 7 -

Case No.   COMPLAINT FOR BREACH OF CONTRACT, BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING AND DECLARATORY RELIEF

accepted, would render illusory much of Plaintiffs' Environmental Liability Insurance;

    (k) Argued that Plaintiffs knew of arsenic contamination when they did not, and that falsely imputed knowledge excuses Chubb's obligation to honor its promises;

    (l) Refused to explain the basis for the minimal payments made against invoices presented or the basis upon which it refuses to pay the overwhelming majority of the arsenic clean-up costs;

    (m) Unreasonably required Plaintiffs to retain counsel and incur attorneys' fees and costs to vindicate their rights under the Policy.

30. Plaintiffs and Chubb have entered into a series of agreements tolling applicable statutes of limitation such that no otherwise applicable statute of limitation bars any of the claims set forth herein.

## FIRST CAUSE OF ACTION
### (Breach Of Contract)

31. Plaintiffs incorporate by this reference as though fully set forth herein the allegations contained in paragraphs 1 through 30 of this Complaint.

32. Plaintiffs and Chubb entered into a contract in the form of the Policy.

33. Plaintiffs have performed all, or substantially all, of the material obligations of the Policy on their part to be performed, including payment to Chubb of substantial insurance premiums.

34. All conditions required by the Policy for Chubb's performance have occurred.

35. Chubb has breached, and continues to breach, its contractual obligations under the Policy in the manners set forth above, including the refusal to pay all but a minute fraction of the costs incurred in remediating the Pincay Property.

- 8 -

Case No.     COMPLAINT FOR BREACH OF CONTRACT, BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING AND DECLARATORY RELIEF

36. As a direct and proximate result of the breaches by Chubb, Plaintiffs have been damaged in an amount currently calculated to be no less than $4,567,394 in "**clean-up costs**" as defined by the Policy, and exclusive of additional damages, prejudgment interest and attorney's fees Plaintiffs have been forced to incur. Plaintiffs will amend this pleading when their damages are ascertained, or according to proof.

Wherefore Plaintiffs pray for judgment as set forth below.

## SECOND CAUSE OF ACTION
### (Breach Of Covenant Of Good Faith And Fair Dealing)

37. Plaintiffs incorporate by this reference as though fully set forth herein the allegations contained in paragraphs 1 through 36 of this Complaint.

38. Implied by law in the Policy was a covenant of good faith and fair dealing, which required that Chubb exercise its rights responsibly and in a manner so as to avoid injury to Plaintiffs. This covenant requires that Chubb refrain from conscious, deliberate, and/or reckless acts which frustrate the purpose of the insurance it issued and deny Plaintiffs the benefits of the Policy.

39. Chubb has breached the covenant of good faith and fair dealing in that the actions and contentions set forth above were and are designed to place its own interests ahead of the interests of its policyholders, to deny Plaintiffs the benefits of the insurance purchased from Chubb, and to deny Plaintiffs their reasonable expectations in recovering pursuant to the Policy.

40. As a result of Chubb's breaches of the implied covenant of good faith and fair dealing, Plaintiffs have been forced to retain counsel and have incurred and continue to incur attorneys' fees in order to obtain the benefits provided by the Policy, and have suffered damage as set forth herein.

41. In breaching the implied covenant of good faith and fair dealing, Chubb acted with malice, fraud, and oppression and conscious disregard of Plaintiffs' rights, entitling Plaintiffs' to an award of exemplary damages.

Wherefore Plaintiffs pray for judgment as set forth below.

## THIRD CAUSE OF ACTION
### (For Declaratory Relief)

42. Plaintiffs incorporate by this reference as though fully set forth herein the allegations contained in paragraphs 1 through 41 of this Complaint.

43. Chubb is obligated to reimburse Plaintiffs for clean-up costs incurred, together with certain other losses, in connection with remediating the arsenic contamination at the Pincay Property.

44. An actual and present controversy exists between Chubb, on the one hand, and Plaintiffs, on the other hand, as to (a) Plaintiffs' rights under the Policy; and (b) Chubb's refusal to acknowledge the extent of its obligation to reimburse Plaintiffs for the remediation of arsenic at the Pincay Property up to, at minimum, the Policy's limits of $5 million.

45. A further actual and present controversy exists between and among Plaintiffs on the one hand, and Chubb on the other hand, to the extent that Chubb (a) does or may assert that arsenic concentrations dozens of times greater than those naturally occurring were caused by something other than a Pollution Incident; (b) does or may assert that the approved and implemented arsenic remediation is or may be excluded from coverage under provisions excluding coverage for dry cleaning solvents like PCE (which arsenic is not) or petroleum hydrocarbons (which arsenic is not) or groundwater pollution (which is not involved); (c) does or may assert that an environmental consultant's apparent knowledge of small amounts of arsenic at an adjoining property constitutes prior knowledge by TKG of contamination on the Pincay Property; (d) does or may assert that improvements to a parking lot to allow it to function as a parking lot constitutes a "change in use" that is not within the Policy's coverage; (e) does or may assert that, notwithstanding its many years insuring TKG's real estate operations, including TKG's acquisition and improvement of properties, Chubb

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

could without any inquiry on its application accept and retain premiums and issue policies that, by inclusion of its "change in use" clause, would not cover any properties that TKG improved; (f) does or may assert that its course of dealing with its insureds is not relevant to interpretation of the Policy or that it is not estopped from raising such defenses; (g) does or may assert that it reasonably relied on advice of counsel in declining to pay for all but a small fraction of the loss incurred by Plaintiffs; and (g) does or may assert that it may advance "defenses" such as those identified without breaching its covenant of good faith and fair dealing.

46. Plaintiffs vigorously dispute each of Chubb's above contentions and specifically dispute that Chubb may in good faith advance the denials it purports to advance.

47. A judicial declaration of the rights and duties of the parties is necessary to resolve the disputes set forth herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

1. For general and special damages according to proof, including without limitation attorney's fees, pursuant to *Brandt v. Superior Court*, 37 Cal.3d 813 (1985);

2. For exemplary damages according to proof;

3. For a declaration of rights and obligations under the Policy, including the obligation of Chubb to reimburse Plaintiffs for clean-up costs incurred in undertaking arsenic remediation at the Pincay Property up to the $5 million limit of the Policy;

4. For costs of suit;

5. For interest as allowed by law;

///

///

1  ///

2  ///

3  ///

4  ///

5  6. For such other and further relief as the Court may deem just and
6  proper.

7  DATED: December 31, 2019      SHARTSIS FRIESE LLP

9                                By:    */s/ Anthony B. Leuin*
                                        ANTHONY B. LEUIN

11                                Attorneys for Plaintiffs TKG
                                  Management Inc. and Pincay RE, LLC

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand trial by jury in this action of all issues so triable.

DATED: December 31, 2019      SHARTSIS FRIESE LLP

                              By:    */s/ Anthony B. Leuin*
                                     ANTHONY B. LEUIN

                              Attorneys for Plaintiffs TKG
                              Management Inc. and Pincay RE, LLC

Case No.  COMPLAINT FOR BREACH OF CONTRACT, BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING AND DECLARATORY RELIEF

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598